UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONTE MORGAN, et al.,          )
                               )
          Plaintiff(s),        )      No. C08-5211 BZ
                               )
     v.                        )
                               )      **AMENDED ORDER ON DEFENDANTS'**
HARMONIX MUSIC SYSTEMS,        )      **MOTION TO DISMISS FIRST**
INC., et al.,                  )      **AMENDED COMPLAINT AND MOTION**
                               )      **TO STRIKE**
          Defendant(s).        )
_____)

     Defendants Harmonix Music Systems, Inc., MTV Networks,
and Electronic Arts, Inc. (collectively "defendants") move to
dismiss plaintiffs' first amended consumer class action
complaint ("complaint'), which alleges violations of
California's Consumer Legal Remedies Act, Cal. Civ. Code
§§ 1750 *et seq*. ("CLRA"); Cal. Bus. & Prof. Code §§ 17200 *et
seq.;* ("UCL") as well as violations of the Song-Beverly
Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq*.

///

///

///

///

1

1  ("Song-Beverly Act").[1]  Plaintiffs purchased defendants' Rock

2  Band video game and drum pedal hardware and allege that the

3  drum pedal was defective and broke within months of purchase.

4  For the reasons set forth below, defendants' motion to

5  dismiss for failure to state a claim under Rule 12(b)(6) is

6  **DENIED IN PART AND GRANTED IN PART**.[2]

7     Defendants challenge plaintiffs' first claim, for breach

8  of the implied warranty of merchantability, contending that

9  the implied warranty on the drum pedal is coextensive with

10  the express 60 day warranty and expired before plaintiffs'

11  drum pedals broke.

12     The implied warranty of merchantability arises by

13  operation of law.  Hauter v. Zogarts, 14 Cal. 3d 104, 117

14

---

15     [1]    On January 1, 1965, the Uniform Commercial Code took
effect in California. (Cal. U. Com. Code, § 1101 *et seq.; see
16  also* Stats. 1963, ch. 819, and 23A West's Ann. Cal. U. Com.
Code, p. 1.) Division 2 of that code, also known as "Uniform
17  Commercial Code -- Sales," applies to "transactions in goods."
Cal. U. Com. Code, § 2101, 2102.  The provision describing the
18  implied warranty of merchantability appears at section 2314.
Although the Uniform Commercial Code provides a similar
19  warranty of merchantability, its provisions proved "limited in
providing effective recourse to a consumer dissatisfied with a
20  purchase."  Krieger v. Nick Alexander Imports, Inc., 234 Cal.
App. 3d 205, 213 (1991). In order to provide greater
21  protections and remedies for consumers, the Legislature enacted
the Song-Beverly Act.  Robertson v. Fleetwood Travel Trailers
22  of California, Inc., 144 Cal. App. 4th 785, 801 (2006).  It "is
strongly pro-consumer" and "makes clear its pro-consumer
23  remedies are in addition to those available to a consumer
pursuant to the [Uniform] Commercial Code . . . ."  Murillo v.
24  Fleetwood Enterprises, Inc., 17 Cal. 4th 985, 990(1998) To "the
extent that the [Song-Beverly] Act gives rights to the buyers
25  of consumer goods, it prevails over conflicting provisions of
the Uniform Commercial Code."  4 Witkin, Summary of Cal. Law
26  (10th ed. 2005) Sales, § 52, p.63 (citing Civ. Code, § 1790.3).

27     [2]    All parties have consented to my jurisdiction,
including entry of final judgment, pursuant to 28 U.S.C.
28  § 636(c) for all proceedings.

1   (1975).  It does not "impose a general requirement that goods

2   precisely fulfill the expectation of the buyer. Instead, it

3   provides for a minimum level of quality." <u>Burr v. Sherwin</u>

4   <u>Williams Co.</u>, 42 Cal. 2d 682, 694 (1954); <u>Moore v. Hubbard &</u>

5   <u>Johnson Lumber Co.</u>, 149 Cal. App. 2d 236, 240-241 (1957).

6   Under the Song-Beverly Act, the duration of the implied

7   warranty of merchantability is the same as the duration of

8   any reasonable express warranty that accompanies the product,

9   but in no event shorter than 60 days or longer than one year.

10   *See* Cal. Civ. Code, § 1791.1, subd. (c).

11      The Court is not prepared to rule as a matter of law

12   that 60 days is a reasonable duration of the implied warranty

13   of merchantability for the drum pedal.  Defendants have cited

14   no authority, and the Court has found none, which requires

15   such a ruling.  Under the Commercial Code, the reasonableness

16   of any time period depends on the facts and circumstances

17   surrounding its invocation.  *See* Cal. U. Com. Code § 1205

18   (2008) ("Whether a time for taking an action required by this

19   code is reasonable depends on the nature, purpose, and

20   circumstances of the action.).  For products which are likely

21   to be used shortly after purchase and, if defective, fail

22   immediately, sixty days may be a reasonable warranty period.

23   But there are also products which are less likely to be used

24   directly upon purchase or whose defect may not show up for

25   some time.

26      Here, the drum pedal accompanies a video game and,

27   plaintiffs allege, is often bought as a gift, meaning that it

28   may not be used until well after its purchase.  In addition,

1   the defect is latent and may not be apparent on early use.

2   Furthermore, plaintiffs allege that defendants acknowledged

3   the unreasonableness of the 60 day period by advising the

4   public that until October 1, 2008, it would replace a damaged

5   drum pedal even after the 60 day period had expired.  Under

6   these circumstances, plaintiffs have sufficiently alleged a

7   claim for breach of the implied warranty of merchantability.

8        On July 2, 2009, the Court *sua sponte* raised the issue

9   of vertical privity.[3]  Defendants argued that the complaint

10  fails to allege facts establishing contractual vertical

11  privity between plaintiffs and defendants.  Under the

12  California Commercial Code, a plaintiff asserting breach of

13  warranty claims must stand in vertical contractual privity

14  with the defendant.  *See* Clemens v. Daimlerchrysler

15  Corporation, 534 F.3d 1017, 1023 (9th Cir. 2008).  While both

16  parties agree that the Song-Beverly Act does not require

17  vertical privity,  defendants nonetheless argue that insofar

18  as plaintiffs' implied warranty of merchantability claim is

19  based on the Song-Beverly Act, it should be dismissed

20  because, *inter alia*, plaintiffs have failed to allege that

21  they purchased the Rock Band drum pedal in California.  The

22  Song-Beverly Act only governs goods sold at retail in

23  California.  Cal. Civ. Code § 1792; *see also* Anunziato v.

24  eMachines, Inc., 402 F. Supp. 2d 1133, 1142 (C.D. Cal. 2005).

25

26        [3]    After further briefing from the parties, plaintiffs'
     motion to amend the Court's prior order dismissing plaintiffs'
27   complaint with leave to amend is **GRANTED**.  By the consent of
     both parties, who have agreed that the Song-Beverly Act does
28   not contain a vertical privity requirement, this order
     supersedes the Court's prior order (Doc. No. 77).

1   Here, the complaint neither identifies where nor from whom

2   plaintiffs purchased Rock Band and therefore fails to state a

3   claim under either the California Commercial Code or the

4   Song-Beverly Act.  Accordingly, plaintiffs' breach of implied

5   warranty of merchantability claim is **DISMISSED** with leave to

6   amend.

7       Defendants next attack plaintiffs' CLRA claims.  As a

8   threshold matter, defendants argue that plaintiff Monte

9   Morgan ("Morgan") lacks standing to sue under the CLRA

10  because he is a resident of Kansas and did not purchase Rock

11  Band in California.[4]

12      California courts have extended state-created remedies

13  to out-of-state parties harmed by wrongful conduct only when

14  that conduct occurs in California.  *See, e.g.*, Diamond

15  Multimedia Systems, Inc. v. Superior Court, 19 Cal. 4th 1036

16  (1999); Norwest Mortgage, Inc. v. Superior Ct., 72 Cal. App.

17  4th 214, 224-25 (1999) ("State statutory remedies may be

18  invoked by out-of-state parties when they are harmed by

19  wrongful conduct occurring in California.").  Here,

20  plaintiffs' complaint alleges only that defendant Electronic

21  Arts, Inc., the distributor of Rock Band, is headquartered in

22  California.  There are no allegations connecting the other

23  defendants to California.  The complaint fails to allege what

24  conduct of the defendants, if any, that violated the CLRA

25  took place in California or how Morgan was injured in

27      [4]   Whether absent class members have standing to sue
    under California Consumer Protection Laws is better addressed
28  in connection with class certification.

5

1   California.  *See* <u>In re Mattel, Inc.</u>, 588 F. Supp. 2d 1111

2   (N.D. Cal. 2008) (complaint alleged, *inter alia*, that

3   reports, company statements, and advertisements containing

4   misrepresentations were approved by Mattel in California).  I

5   therefore conclude that plaintiffs have failed to allege

6   sufficient facts to establish that Morgan has standing to sue

7   under the CLRA and **GRANT** the motion to dismiss with leave to

8   amend.[5]

9       Defendants argue that the CLRA claims should be

10  dismissed because the complaint "fails to identify a single

11  representation or advertisement by [d]efendants that falsely

12  represents the characteristics, standard, or quality of the

13  *Rock Band* drum pedal."  (D's Mot. to Dismiss p.16.)

14  Plaintiffs allege that defendants, in their representations

15  and omissions, violated: 1) Cal. Civ. Code § 1770(a)(5) by

16  representing that the Rock Band drum kits have approval,

17  characteristics, uses and benefits that they do not have; 2)

18  Cal. Civ. Code § 1770(a)(7) by representing that the Rock

19  Band drum kits were of a particular standard or quality when

20  they were not; and 3) Cal. Civ. Code § 1770(a)(9) when they

21  advertised and marketed Rock Band drum kits with the intent

22  not to sell them as advertised.  More specifically,

23  ────────────────

24      [5]   Defendants make the same standing argument with
    regard to plaintiffs UCL claims, discussed *infra*.  For the same
    reasons that plaintiffs have failed to allege sufficient facts
25  to establish that Morgan has standing to sue under the CLRA,
    plaintiffs have also failed to allege sufficient facts to
26  establish that Morgan has standing to sue under the UCL.  *See*
    <u>Norwest Mortgage, Inc.</u>, 72 Cal. App. at 224-25 (1999)
27  (prohibiting non-California residents from asserting a UCL
    claim based on conduct occurring outside of California's
28  borders).

1    plaintiffs allege that defendants violated the CLRA by

2    failing to disclose to the public that the Rock Band drum

3    pedals were defective and would readily break under ordinary

4    and expected usage, and by continuing to advertise, market,

5    and sell defective drum pedals notwithstanding knowledge of

6    the defect.

7        The CLRA proscribes both active misrepresentations about

8    the standard, quality, or grade of goods, as well as active

9    concealment related to the characteristics or quality of

10   goods that are contrary to what has been represented about

11   the goods.  Outboard Marine Corp. v. Superior Court, 52 Cal.

12   App. 3d 30, 36 (1972).  As stated in Outboard Marine, in the

13   CLRA context, "[f]raud or deceit may consist of the

14   suppression of a fact by one who is bound to disclose it or

15   who gives information of other facts which are likely to

16   mislead for want of communication of that fact." Id. at 37;

17   see also Daugherty v. American Honda Motor Co., Inc., 144

18   Cal. App. 4th 824, 833-36 (2006) ("although a claim may be

19   stated under the CLRA in terms constituting fraudulent

20   omissions, to be actionable the omission must be contrary to

21   a representation actually made by the defendant, or an

22   omission of a fact the defendant was obliged to disclose.").

23       I find that the complaint does not plead sufficient

24   facts to state a claim under the CLRA for affirmative

25   misrepresentation or concealment.  The complaint fails to

26   identify any affirmative representation by defendant that the

27   drum pedals had a characteristic that they do not have, or

28   are of a standard or quality of which they are not.  See Cal.

7

1   Civ. Code, § 1770, subd. (a)(5) & (7).  Plaintiffs argue that

2   the complaint "includes numerous allegations of affirmative

3   representations"; yet the allegations to which plaintiffs

4   direct my attention merely state that plaintiffs weren't able

5   to play the game "as advertised."

6       Essentially, plaintiffs contend that any statement made

7   by defendants that the Rock Band game could be played with

8   drums was false because for certain customers, the pedal

9   eventually failed.  But California courts require more than

10  "vague statements" about a product to form the basis of an

11  actionable CLRA misrepresentation claim.  *See, e.g.*, Long v.

12  Hewlett-Packard Co., No. 06-02816, 2007 U.S. Dist. LEXIS

13  79262, 2007 WL 2994812, at *20-21 (N.D. Cal. July 27, 2007)

14  ("The word 'notebook' describes the type of product being

15  sold; it does not constitute a representation regarding the

16  quality of the computer's parts, nor a representation

17  regarding the consistency or longevity of the computer's

18  operation."); *see also* Consumer Advocates v. Echostar

19  Satellite Corp., 113 Cal. App. 4th 1351 (2003) (statements of

20  "crystal clear digital video" and "CD-quality audio" were

21  non-actionable, while representations that customers would

22  receive "50 channels" and a "7-day schedule" were actionable

23  misrepresentations).  The cases upon which plaintiffs rely

24  involve situations where a specific representation was made

25  about a product that proved false.  For example, in Paduano

26  v. America Honda Motor Co., 169 Cal. App. 4th 1453 (2009),

27  the court held that "just drive the Hybrid like you would a

28  conventional car, while saving on fuel bills" could be a

1  misrepresentation because the Hybrid could not save on fuel

2  bills if driven exactly like a conventional car.  The

3  representation was specific to what would happen if the

4  Hybrid was driven a certain way.  Here, plaintiffs have

5  alleged no specific representations about the durability of

6  the foot pedal.

7       Nor does the complaint allege facts showing that

8  defendants were "bound to disclose" any defect in the drum

9  pedal, particularly in light of the fact that both

10  plaintiffs' drum pedals, according to the complaint, lasted

11  the duration of the express warranty.[6]  See Oestreicher v.

12  Alienware Corp., 544 F. Supp. 2d 964, 969-70 (2008)

13  (reviewing case law pertaining to when there is a duty to

14  disclose).  According to all relevant case law, defendants

15  are only under a duty to disclose a known defect in a

16  consumer product when there are safety concerns associated

17  with the product's use.  See, e.g., Daugherty, 144 Cal. App.

18  4th at 835-36; Bardin v. DaimlerChrysler Corp., 136 Cal. App.

19  4th 1255 (2006); Long v. Hewlett-Packard Co., No. 06-02816,

20  2007 U.S. Dist. LEXIS 79262, 2007 WL 2994812, at *8 (N.D.

21  Cal. July 27, 2007).

22       Accordingly, plaintiffs' claim for violation of the CLRA

23

24       [6]   The complaint alleges that plaintiff Morgan purchased
   his drum kit on July 6, 2008 and that his pedal broke on
25  October 18, 2008, more than one month after the sixty day
   warranty expired.  The complaint alleges that plaintiff Vasquez
26  purchased his drum kit "on or about" December 15, 2007 and that
   his pedal broke "in February 2008."  It is unclear whether
27  Vasquez's pedal broke before or after the sixty day warranty
   elapsed and why it was not replaced under the extended warranty
28  period provided by defendants throughout most of 2008.

1   fails because the complaint neither alleges facts showing

2   defendants were "bound to disclose" any known defects related

3   to the Rock Band drum pedal, nor alleges a single affirmative

4   representation by defendants regarding the drum pedals.

5   Plaintiffs' CLRA claim is **DISMISSED** with leave to amend.

6        Finally, defendants argue that plaintiffs fail to state

7   a claim under California's Unfair Competition Law, Cal. Bus.

8   & Prof. Code § 17200 *et seq.*  The UCL prohibits acts or

9   practices which are (1) fraudulent, (2) unlawful, or (3)

10  unfair.  Cal. Bus. & Prof. Code § 17200.  Plaintiffs argue

11  that the complaint states a claim for unfair competition by

12  alleging that the defendants intentionally concealed a known

13  defect with the Rock Band drum pedals for the specific

14  purpose of "deliberately cheating large numbers of consumers

15  out of individually small sums of money" by forcing consumers

16  to either buy the new version of Rock Band or a replacement

17  part.  (Compl. ¶¶ 31, 67).  They argue that defendants'

18  actions violated all three prongs of the UCL.

19       By proscribing unlawful business practices, the UCL

20  borrows violations of other laws and treats them as

21  independently actionable.  Practices may be deemed unfair or

22  fraudulent, however, even if not proscribed by some other

23  law.  Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th

24  377, 383 (1992); *see also* Cel-Tech Communications, Inc. v.

25  Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180

26  (1999).

27       "[A]n action based on . . . [S]ection 17200 to redress

28  an unlawful business practice borrows violations of other

1  laws and treats these violations, when committed pursuant to

2  business activity, as unlawful practices independently

3  actionable." Farmers Ins. Exchange, 2 Cal. 4th at 383

4  (citations and internal quotations omitted).  I have

5  concluded that plaintiffs have not stated a CLRA claim, and

6  plaintiffs have not identified any other law which they claim

7  defendants violated, the CLRA cannot serve to support a claim

8  under the "unlawful" prong of Section 17200.

9       With regard to the unfairness prong of the UCL, I find

10  that plaintiffs have failed to allege that defendants'

11  actions were unfair, as that term is used under the UCL.

12  Historically, in order to determine whether conduct is unfair

13  under the UCL, California courts applied a balancing test.

14  Under that test, "the determination of whether a particular

15  business practice is unfair necessarily involves an

16  examination of its impact on its alleged victim, balanced

17  against the reasons, justifications and motives of the

18  alleged wrongdoer. In brief, the court . . . weigh[s] the

19  utility of the defendant's conduct against the gravity of the

20  harm to the alleged victims." Motors, Inc. v. Times Mirror

21  Co., 102 Cal. App. 3d 735, 740 (1980); see also People v.

22  Casa Blanca Convalescent Homes Inc., 159 Cal. App. 3d 509

23  (1984) (stating that a practice in California is unfair "when

24  it offends an established public policy or when the practice

25  is immoral, unethical, oppressive, unscrupulous or

26  substantially injurious to consumers.").  However, in

27  Cel-Tech Communications, Inc. v. Los Angeles Cellular

28  Telephone Co., 20 Cal. 4th 163 (1999), the Supreme Court of

1    California rejected this test and held that in the context of

2    an unfair competition claim brought by a competitor, "any

3    finding of unfairness . . . [must] be tethered to some

4    legislatively declared policy." <u>Id.</u> at 185.  While the

5    <u>Cel-Tech</u> court expressly limited its holding to competitor

6    lawsuits, the appropriate test to determine whether a

7    practice is "unfair" in a consumer case under California law

8    is uncertain.[7]  <i>See</i> <u>Lozano v. AT&T Wireless Services, Inc.</u>,

9    504 F.3d 718, 735 (9th Cir. 2007) (stating "California's

10   unfair competition law, as it applies to consumer suits, is

11   currently in flux."); <i>see also</i> <u>Spiegler v. Home Depot U.S.A.</u>,

12   552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008).

13       I conclude that under either test, plaintiffs' complaint

14   does not sufficiently allege that defendants engaged in

15   unfair practices.  First, plaintiffs have not alleged facts

16   sufficient to show that defendants' conduct violates a

17   "legislatively declared policy."  Second, under the balancing

18   test, plaintiffs have failed to state a claim, as they do not

19   allege that defendants made any specific representations

20   about the composition of the drum pedals relative to their

21

22       [7]    Following the California Supreme Court's decision in
     <u>Cel-Tech</u>, appellate court opinions have been divided over
23   whether the definition of "unfair" under the UCL as stated in
     <u>Cel-Tech</u> should apply to UCL actions brought by consumers.  <i>See</i>
24   <u>Paulus v. Bob Lynch Ford, Inc.</u>, 139 Cal. App. 4th 659 (2006)
     (noting split of authority).  Compare, for example, <u>Smith v.</u>
25   <u>State Farm Mutual Automobile Ins. Co.</u> (2001) 93 Cal. App. 4th
     700, 720 n.23 (2001) ("we are not to read <u>Cel-Tech</u> as
26   suggesting that such a restrictive definition of 'unfair'
     should be applied in the case of an alleged consumer injury")
27   with <u>Scripps Clinic v. Superior Court</u>, 108 Cal. App. 4th 917,
     940 (2003) (requiring, under <u>Cel-Tech</u>, that a UCL claim be
28   tethered to a legislatively declared policy).

1   use; that plaintiffs suffered any substantial injury due to

2   the alleged defect in the drum pedals other than the cost for

3   the repair or replacement of the drum pedals; or that

4   defendants' actions violated any public policy.  *See* Bardin,

5   136 Cal. App. 4th at 1270 (allegation that manufacturer used

6   less expensive and less durable steel, rather than cast iron,

7   in exhaust manifold to make more money does not state a

8   violation of public policy and was not immoral or unethical);

9   *see also* Spiegler, 552 F. Supp. 2d at 1045-46.  Accordingly,

10  plaintiffs have not alleged sufficient facts to establish a

11  violation of the "unfairness" prong of the UCL.

12      Finally, the conduct alleged does not constitute a

13  fraudulent business act or practice.  Unlike common law

14  fraud, a UCL violation can be shown even without allegations

15  of actual deception, reasonable reliance, and damage.

16  Historically, the term "fraudulent," as used in the UCL, has

17  required only a showing that members of the public are likely

18  to be deceived.  Committee on Children's Television, Inc. v.

19  General Foods Corp., 35 Cal.3d 197, 211 (1983) *superceded on*

20  *other grounds as explained in* Californians for Disability

21  Rights v. Mervyn's, LLC, 39 Cal. 4th 223, 228 (2006); *see*

22  *also* Schnall v. Hertz Corp., 78 Cal. App. 4th 1144, 1167

23  (2000).  Plaintiffs contend that defendants' failure to

24  disclose the defect in the drum pedal, and their continued

25  efforts to market and advertise the Rock Band game as one in

26  which an individual could play the part of a drummer, were

27  deceptive practices that were "likely to deceive members of

28  the consuming public."  (Compl. ¶¶ 71-74.)  Fairly read, the

1    complaint's focus is on defendants' alleged failure to

2    disclose their alleged knowledge that the drum pedals would

3    fail to work properly after only slight use.  However, as

4    previously stated, "[a]bsent a duty to disclose, the failure

5    to do so does not support a claim under the fraudulent prong

6    of the UCL." Berryman v. Merit Property Management, Inc.,

7    152 Cal. App. 4th 1544, 1557 (2007) (failure to disclose

8    detailed listings or breakdowns of specific escrow charges

9    comprising transfer or document fees did not violate the

10   UCL).  This is because a consumer is not "likely to be

11   deceived" by the omission of a fact that was not required to

12   be disclosed in the first place.[8]

13        "In order to be deceived, members of the public must

14   have had an expectation or an assumption about" the product

15   at issue.  Bardin, 136 Cal. App. 4th at 1275.  Here, the

16   complaint fails to allege facts showing that defendants made

17   any representation regarding the durability of the drum

18   pedals.  Accordingly, the only expectation buyers could have

19   had about the drum pedals was that they would function

20   properly for the length of the express warranty, which

21   according to the allegations of the complaint, was about how

22
          [8]    Plaintiffs' reliance on Falk v. General Motors, 496
23   F. Supp. 2d 1088 (N.D.Cal. 2007)(manufacturer owed a duty to
     disclose a known safety defect) and Baggette v. Hewlett-Packard
24   Co., 582 F.Supp. 2d 1261 (C.D. Cal. 2007)(specific
     representation that ink cartridge was empty when it was not was
25   actionable) is misplaced.  Here, there are no allegations that
     the allegedly defective foot pedal created a safety problem or
26   that defendants made any representation about the durability of
     the pedal.  Furthermore, at least one state court has declined
27   to read Falk as recognizing a duty to disclose outside the
     safety area.  Buller v. Sutter Health, 160 Cal. App. 4th, 981,
28   988 (2008).

                                   14

long the pedals lasted. *See* <u>Daugherty</u>, 144 Cal. App. 4th at 838. Plaintiffs' allegations are therefore insufficient to sustain a fraud-based claim under the UCL. Plaintiffs' claims for violations of the UCL are **DISMISSED** with leave to amend.[9]

Plaintiffs' amended complaint shall be filed by **August 14, 2009.** In view of the referral to Judge Spero for a settlement conference, defendants need not respond to the amended complaint until 15 days after the conclusion of the settlement conference. The current class certification schedule is **VACATED.** If the case does not settle, the parties shall stipulate to a new schedule or contact the Court for a status conference.

Dated: July 30, 2009

Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\MORGAN v. HARMONIX\AMENDED ORDER ON D'S MOT TO DISMISS.FINAL.wpd

---

[9] Defendants' motion to strike is **DENIED** without prejudice. Issues related to plaintiffs' proposed class definition are better resolved as part of the class certification process.

15

1   IAN K. BOYD (SBN 191434)
    iboyd@harveysiskind.com
2   SETH I. APPEL (SBN 233421)
    sappel@harveysiskind.com
3   HARVEY SISKIND LLP
4   Four Embarcadero Center, 39th Floor
    San Francisco, CA 94111
5   Telephone:    (415) 354-0100
    Facsimile:     (415) 391-7124
6

7   Attorneys for Plaintiff
8   INTEL CORPORATION

9

**IN THE UNITED STATES DISTRICT COURT**

10

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| INTEL CORPORATION, a Delaware corporation, | CV **09** **3721** Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| vs. | |
| HARRIS CORPORATION, a Delaware corporation, | |
| Defendant. | |

12

13

14

15

16

17

18

19      Plaintiff Intel Corporation ("Intel") alleges as follows:

20      1.     This action arises from unauthorized use of the trade name and trademark CENTRIO by

21 defendant Harris Corporation ("Harris").

22      2.     By using a trade name and trademark that is virtually identical to the world famous

23 CENTRINO® trademark, Harris has caused and is likely to continue to cause confusion that Intel is the

24 source or sponsor of Harris's goods and services, or that there is an association between Intel and

25 Harris. In addition, Harris's acts are causing, and/or are likely to cause, dilution of the CENTRINO

26 trademark. Consequently, Intel seeks injunctive relief and damages under the federal Lanham Act (15

27 U.S.C. §§ 1051, *et seq.*), the California Business and Professions Code, and the common law doctrines

28 of passing off and unfair competition.

-1-

**I. JURISDICTION**

3. This Court has personal jurisdiction over Harris because, on information and belief, it conducts or has conducted business, as well as advertised and promoted its goods and services, in the State of California and within this judicial district, and the effects of those acts have been felt in this district.

4. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367. Intel's claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051, *et seq.* The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332, 1338(b), and 1367.

**II. INTRADISTRICT ASSIGNMENT**

5. This is an intellectual property action and therefore shall be assigned on a district-wide basis per Civil L.R. 3-2(c).

**III. THE PARTIES**

6. Plaintiff Intel is a Delaware corporation having its principal place of business at 2200 Mission College Boulevard, Santa Clara, California. Intel offers a wide variety of goods and services, which are sold worldwide and throughout the United States, including in the Northern District of California.

7. Upon information and belief, Defendant Harris has a principal place of business at 1025 West NASA Boulevard, Melbourne, Florida. Harris promotes its goods and services on the World Wide Web at the following websites: www.harris.com. Upon information and belief, Harris targets consumers nationwide, including consumers in California, and has numerous customers in this state.

**IV. INTEL'S BUSINESS AND MARKS**

8. Intel is a world-famous technology company that develops, manufactures and sells a wide variety of computer, communications and Internet-related products and services. Intel's customers include individual consumers, businesses, schools, and the government.

9. Since at least as early as 2003, Intel has used CENTRINO as a trade name, trademark and service mark to identify certain products and services. Intel has invested hundreds of millions of dollars in advertising and promotion of its products and services offered under its CENTRINO mark.

-2-

1  Intel has also licensed its CENTRINO mark to wireless service providers, hotspot location providers,
2  and manufacturers of wireless access points, media devices and software. Intel's extensive investment
3  and efforts in promoting its CENTRINO mark have made this mark famous.

4      10.    Intel is the owner of U.S. trademark registrations for the mark CENTRINO, including
5  the following:

6      a. A U.S. Trademark Registration (Reg. No. 2981698) for its CENTRINO trademark
7  in International Class 9 which issued on August 2, 2005, covering the following goods: "Computers;
8  computer hardware; semiconductors; microprocesors and other semiconductor devices; integrated
9  circuits; computer chipsets; microcomputers; software programmable microprocessors; notebook and
10 laptop computers; portable computers; handheld computers; computer software for use in providing
11 multiple access to a global computer information network for searching, retrieving, transferring,
12 manipulating and disseminating a wide range of information; computer firmware, namely, computer
13 operating system software, computer utility software and other computer software used to maintain and
14 operate computer system all stored in a computer's read-only memory (ROM) or elsewhere in the
15 computer's circuitry; computer and telecommunications networking hardware; computer and
16 telecommunications networking software for wireless network communications and connectivity;
17 wireless and wired modems and communication cards." A copy of this registration, which is valid and
18 subsisting, is attached hereto as Exhibit A.

19     b. A U.S. Trademark Registration (Reg. No. 3067941) for its CENTRINO trademark
20 in International Class 38 on March 14, 2006, which covers the following services: "Communication
21 services namely, providing wireless access to global communications networks; telecommunication
22 consulting services." A copy of this registration, which is valid and subsisting, is attached hereto as
23 Exhibit B.

24     11.    Through its extensive use, Intel also owns common law trademark rights in
25 CENTRINO for all of the goods and services and activities identified herein.

26     12.    As a consequence of the extensive sales, advertising, promotion, and uses of the
27 CENTRINO trademarks, Intel has developed enormous recognition for its products and services under
28 the CENTRINO mark and has acquired and enjoys an immensely valuable reputation and tremendous

-3-

1  goodwill under the mark. The CENTRINO mark is world renowned, and is a "famous" mark for

2  purposes of 15 U.S.C. § 1125(c)(1).

3  **V.     HARRIS'S USE OF CENTRIO**

4         13.     Intel is informed and believes that Harris offers for sale goods and services under the

5  CENTRIO mark, including but not limited to multiviewers for displaying video signals, and related

6  computer software. Intel is informed and believes that such conduct takes place nationwide and in the

7  state of California.

8         14.     The CENTRIO trademark is substantially and confusingly similar to the CENTRINO

9  trademark. CENTRIO is nearly identical in sight and sound, to the world famous CENTRINO

10 trademark. Harris has a pending U.S. Trademark Application (Serial No. 77/177195) for CENTRIO

11 for "electronic devices, namely, multiviewers for displaying one or more video signals in user-

12 customizable display formats; computer software, namely, multiviewer software for displaying one or

13 more video signals in user-customizable display formats."

14        15.     Intel has made numerous attempts in good faith to resolve this dispute amicably with

15 Harris, but such efforts have been unsuccessful, leaving Intel no choice but to file this Complaint.

16                           **FIRST CAUSE OF ACTION**
                          **TRADEMARK INFRINGEMENT**
17                              **(15 U.S.C. § 1114)**

18        16.     Intel realleges and incorporates herein by reference the matters alleged in Paragraphs

19 1 through 15 of this Complaint.

20        17.     Upon information and belief, Harris was aware of Intel's business and its world-famous

21 CENTRINO mark prior to the adoption and use of the CENTRIO trademark.

22        18.     Harris either had actual notice and knowledge, or had constructive notice, of Intel's

23 ownership and registrations of the CENTRINO marks pursuant to 15 U.S.C. § 1072 prior to Harris's

24 adoption and use of the CENTRIO trademark.

25        19.     Harris is using the CENTRIO trademark in connection with the sale of its

26 goods/services without Intel's consent, and with knowledge of Intel's rights.

27

28

                                    -4-

20.     Harris's unauthorized use of the CENTRIO trademark falsely indicates to consumers that Harris's services are in some manner connected with, sponsored by, affiliated with, or related to Intel, Intel's licensees, or the goods and services of Intel and Intel's licensees.

21.     Harris's unauthorized use of the CENTRIO trademark is also likely to cause consumers to be confused as to the source, nature and quality of the goods/services Harris is promoting or selling.

22.     Harris's unauthorized use of the CENTRIO trademark in connection with the sale of its goods/services allows, and will continue to allow, Harris to receive the benefit of the goodwill established at great labor and expense by Intel and to gain acceptance of Harris's goods/services, not based on the merits of those goods/services, but on Intel's reputation and goodwill.

23.     Harris's unauthorized use of the CENTRIO trademark in connection with the sale of its goods/services deprives Intel of the ability to control the consumer perception of the quality of the goods and services marketed under the CENTRINO mark, and places Intel's valuable reputation and goodwill in the hands of Harris, over which Intel has no control.

24.     Harris's acts are likely to cause confusion, or to cause mistake, or to deceive consumers or potential consumers in violation of 15 U.S.C. § 1114.

25.     Intel has been, is now, and will be irreparably injured and damaged by Harris's trademark infringement, and unless enjoined by the Court, Intel will suffer further harm to its name, reputation and goodwill. This harm constitutes an injury for which Intel has no adequate remedy at law.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(A))

26.     Intel realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 25 of this Complaint.

27.     Harris's unauthorized use of the CENTRIO trademark falsely suggests that its services are connected with, sponsored by, affiliated with, or related to Intel, and constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

-5-

28. Intel has been, is now, and will be irreparably injured and damaged by Harris's aforementioned acts, and unless enjoined by the Court, Intel will suffer further harm to its name, reputation and goodwill. This harm constitutes an injury for which Intel has no adequate remedy at law.

### THIRD CAUSE OF ACTION
### FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(C))

29. Intel realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 28 of this Complaint.

30. The CENTRINO mark is world-renowned. It is a famous mark that is widely recognized by consumers, businesses and industry, and that identifies the products and services of Intel in the minds of consumers.

31. Harris's unauthorized use of the CENTRIO trademark began after Intel's CENTRINO mark had become famous.

32. Harris's unauthorized use of the CENTRIO trademark has, and will continue to have, an adverse effect upon the value and distinctive quality of the CENTRINO mark. Harris's acts blur and whittle away at the distinctiveness and identity-evoking quality of the CENTRINO mark. Harris's acts have diluted and are likely to continue diluting the famous CENTRINO mark in violation of 15 U.S.C. § 1125(c).

33. Intel has been, is now, and will be irreparably injured and damaged by Harris's aforementioned acts, and unless enjoined by the Court, Intel will suffer further harm to its name, reputation and goodwill. This harm constitutes an injury for which Intel has no adequate remedy at law.

### FOURTH CAUSE OF ACTION
### INJURY TO BUSINESS REPUTATION AND
### DILUTION UNDER CALIFORNIA LAW
### (CAL. BUS. & PROF. CODE §14247)

34. Intel realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 33 of this Complaint.

-6-

1    35.    Harris's unauthorized use of the CENTRIO trademark is likely to injure Intel's business

2  reputation, and has diluted, and/or is likely to dilute, the distinctive quality of the CENTRINO mark

3  and trade name in violation of the California Business and Professions Code §14247.

4    36.    Harris willfully intended to trade on Intel's image and reputation and to dilute the

5  CENTRINO trademark, acted with reason to know, or was willfully blind as to the consequences of its

6  actions.

7    37.    Harris's wrongful acts have caused and will continue to cause Intel irreparable harm.

8  Intel has no adequate remedy at law for Harris's dilution.

9    38.    Intel is therefore entitled to a judgment enjoining and restraining Harris from engaging

10  in further acts of dilution pursuant to California Business and Professions Code § 14247.

11  
12

**FIFTH CAUSE OF ACTION**
**COMMON LAW PASSING OFF**
**AND UNFAIR COMPETITION**

13    39.    Intel realleges and incorporates herein by reference the matters alleged in paragraphs

14  1 through 38 of this Complaint.

15    40.    Harris's unauthorized use of the CENTRIO trademark constitutes passing off and unfair

16  competition of the CENTRINO mark in violation of the common law of California.

17    41.    Harris's wrongful acts have caused and will continue to cause Intel irreparable harm.

18  Intel has no adequate remedy at law.

19    42.    Intel is entitled to a judgment enjoining and restraining Harris from engaging in further

20  acts of infringement and unfair competition.

21  
22  
23

**SIXTH CAUSE OF ACTION**
**UNFAIR COMPETITION**
**(CAL. BUS & PROF. CODE § 17200)**

24    43.    Intel realleges and incorporates herein by reference the matters alleged in Paragraphs 1

25  through 42 of this Complaint.

26    44.    Harris's acts described above constitute unfair competition in violation of California

27  Business and Professional Code § 17200 et seq., as they are likely to deceive the public.

28

-7-

1     45.     Harris's acts of unfair competition have caused and will continue to cause Intel

2 irreparable harm. Intel has no adequate remedy at law for Harris's unfair competition.

3     46.     Intel is entitled to a judgment enjoining and restraining Harris from engaging in further

4 unfair competition.

5                              **PRAYER FOR RELIEF**

6     WHEREFORE, Intel prays for relief as follows:

7     1.     Entry of an order and judgment requiring that Harris and its agents, servants,

8 employees, owners and representatives, and all other persons, firms or corporations in active concert or

9 participation with it, be enjoined and restrained from (a) using in any manner the CENTRIO mark, or

10 any name, mark or domain name that is confusingly similar to or a colorable imitation of Intel's

11 CENTRINO mark; (b) doing any act or thing calculated or likely to cause confusion or mistake in the

12 minds of members of the public, or prospective customers of Intel's products or services, as to the

13 source of the products or services offered for sale, distributed, or sold, or likely to deceive members of

14 the public, or prospective customers, into believing that there is some connection between Harris and

15 Intel; and (c) committing any acts which will tarnish, blur, or dilute, or likely to tarnish, blur, or dilute

16 the distinctive quality of the famous CENTRINO mark;

17     2.     A judgment ordering Harris, pursuant to 15 U.S.C. § 1116(a), to file with this Court and

18 serve upon Intel within thirty (30) days after entry of the injunction, a report in writing under oath

19 setting forth in detail the manner and form in which Harris has complied with the injunction, ceased all

20 sales of services under the CENTRIO trademark as set forth above;

21     3.     A judgment ordering Harris, pursuant to 15 U.S.C. § 1118, to deliver up for destruction,

22 or to show proof of said destruction or sufficient modification to eliminate the infringing matter, all

23 articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits,

24 packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles or

25 other matter in the possession, custody, or under the control of Harris or its agents bearing the

26 trademark CENTRIO in any manner, or any mark that is confusingly similar to or a colorable imitation

27 of Intel's CENTRINO mark;

28

-8-

1    4.    A judgment in the amount of Intel's actual damages, Harris's profits, Intel's reasonable

2    attorneys' fees and costs of suit, and pre-judgment interest pursuant to 15 U.S.C. §1117;

3    5.    A judgment for enhanced damages under 15 U.S.C. §1117 and punitive damages under

4    state law as appropriate;

5    6.    A judgment granting Intel such other and further relief as the Court deems just and

6    proper.

7

8    Dated: August 13, 2009                    Respectfully submitted,

9                                              HARVEY SISKIND LLP
                                               IAN K. BOYD
10                                             SETH I. APPEL

11

12                                             By:  _____

13                                                  Seth I. Appel

14                                             Attorneys for Plaintiff
                                               INTEL CORPORATION
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              -9-

1    **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2

3        Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named

4    parties, there is no such interest to report.

5

6    Dated: August 13, 2009                              Respectfully submitted,

7                                                        HARVEY SISKIND LLP

8                                                        IAN K. BOYD
                                                         SETH I. APPEL
9

10
                                                         By:  _____
11                                                              Seth I. Appel

12
                                                         Attorneys for Plaintiff
13                                                       INTEL CORPORATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                 -10-

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38                Reg. No. 2,981,698

United States Patent and Trademark Office        Registered Aug. 2, 2005

Amended                                          OG Date Oct. 21, 2008

## TRADEMARK
## PRINCIPAL REGISTER

### CENTRINO

INTEL CORPORATION (DELAWARE CORPORATION)
2200 MISSION COLLEGE BOULEVARD
SANTA CLARA, CA 95052
THE ENGLISH TRANSLATION OF THE WORD CENTRINO IN THE MARK IS "DOILY".

FOR: COMPUTERS, COMPUTER HARDWARE; SEMICONDUCTORS; MICROPROCESSORS AND OTHER SEMICONDUCTOR DEVICES; INTEGRATED CIRCUITS; COMPUTER CHIPSETS; [ COMPUTER MOTHERBOARDS AND DAUGHTERBOARDS;] MICROCOMPUTERS; [ COMPUTER WORKSTATIONS, NAMELY, PROCESSORS, CENTRAL PROCESSING UNITS, COMPUTER FURNITURE, COMPUTER MONITORS, KEYBOARDS, COMPUTER PERIPHERALS, COMPUTER PRINTERS; ] SOFTWARE PROGRAMMABLE MICROPROCESSORS; NOTEBOOK AND LAPTOP COMPUTERS; PORTABLE COMPUTERS; HANDHELD COMPUTERS; [ COMPUTER PERIPHERALS; PERSONAL DIGITAL ASSISTANTS;] COMPUTER SOFTWARE FOR USE IN PROVIDING MULTIPLE USER ACCESS TO A GLOBAL COMPUTER INFORMATION NETWORK FOR SEARCHING, RETRIEVING, TRANSFERRING, MANIPULATING AND DISSEMINATING A WIDE RANGE OF INFORMATION; COMPUTER FIRMWARE, NAMELY, COMPUTER OPERATING SYSTEM SOFTWARE, COMPUTER UTILITY SOFTWARE AND OTHER COMPUTER SOFTWARE USED TO MAINTAIN AND OPERATE COMPUTER SYSTEM ALL STORED IN A COMPUTER'S READ-ONLY MEMORY (ROM) OR ELSEWHERE IN THE COMPUTER'S CIRCUITRY; COMPUTER AND TELECOMMUNICATIONS NETWORKING HARDWARE; COMPUTER AND TELECOMMUNICATIONS NETWORKING SOFTWARE FOR WIRELESS NETWORK COMMUNICATIONS AND CONNECTIVITY; [ NETWORKING SERVERS; COMPUTER NETWORK ADAPTERS, SWITCHES, ROUTERS AND HUBS; ] WIRELESS AND WIRED MODEMS AND COMMUNICATION CARDS; [ MOBILE TELEPHONES; REPLACEMENT OR STRUCTURAL PARTS THEREFOR ], IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 3-0-2003; IN COMMERCE 3-0-2003.

SER. NO. 78-171,347, FILED 10-4-2002.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Oct. 21, 2008.*

DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE

# EXHIBIT A

Int. Cl.: 38

Prior U.S. Cls.: 100, 101 and 104

**Reg. No. 3,067,941**

**United States Patent and Trademark Office** Registered Mar. 14, 2006

## SERVICE MARK
## PRINCIPAL REGISTER

# CENTRINO

INTEL CORPORATION (DELAWARE CORPORA-
TION)

2200 MISSION COLLEGE BOULEVARD

SANTA CLARA, CA 95052

FOR: COMMUNICATION SERVICES NAMELY,
PROVIDING WIRELESS ACCESS TO GLOBAL
COMMUNICATIONS NETWORKS; TELECOMMU-
NICATION CONSULTING SERVICES, IN CLASS 38
(U.S. CLS. 100, 101 AND 104).

FIRST USE 3-0-2003; IN COMMERCE 3-0-2003.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 2,931,701 AND OTH-
ERS.

THE ENGLISH TRANSLATION OF CENTRINO IS
DOILY.

SER. NO. 78-581,617, FILED 3-7-2005.

WENDY GOODMAN, EXAMINING ATTORNEY

# EXHIBIT B